IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DIAKESHIA S. BROOKS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: **3:20-cv-00854-HEH** |
| CARRY-ON TRAILER, INC., | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Diakeshia S. Brooks ("Ms. Brooks" or "Plaintiff"), by counsel, respectfully states the following for her Complaint against the defendant, Carry-On Trailer, Inc. ("Carry-On" or "Defendant"):

## INTRODUCTION

1. Ms. Brooks brings causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against Carry-On arising from discrimination against her on the basis of her sex, a sexually hostile work environment, and Carry-On's retaliation against Ms. Brooks for her complaints about sexual harassment in the workplace, and a claim under Virginia common law for Carry-On's negligent retention of Ms. Brooks' harassers.

## PARTIES

2. Plaintiff, Ms. Brooks, is a natural person who is a citizen of the Commonwealth of Virginia and she resides in Warsaw, Virginia.

3. Defendant, Carry-On, is a Virginia stock corporation with its principal office located at 101 Joe Harvey St., Lavonia, Georgia 30553.  Carry-On operates a trailer manufacturing

facility located at 159 Industrial Park Road, Montross, Virginia 22520 in Westmoreland County, Virginia. Carry-On is owned by Bain Capital Private Equity.

4. At all relevant times, Ms. Brooks was an "employee" of Carry-On as defined by 42 U.S.C. § 2000e(f).

5. At all relevant times, Carry-On was an "employer" as defined by 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

6. On or about October 15, 2019, Ms. Brooks timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and pursuant to the EEOC's work sharing agreement with the Virginia Division of Human Rights (EEOC Charge No.: 437-2019-01513) ("Charge of Discrimination").

7. Ms. Brooks' Charge of Discrimination included the subject discrimination claims based upon her sex (female) and retaliation.

8. The EEOC issued a Dismissal and Notice of Suit Rights dated August 6, 2020 ("Notice") with regard to the Charge of Discrimination.

9. Ms. Brooks timely files this action less than ninety (90) days after her receipt of the Notice from EEOC.

10. This Court has subject matter jurisdiction over this action pursuant to Title VII.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the subject causes of action arise under Title VII, a law of the United States.

12. This Court has supplemental jurisdiction over the subject matter of Plaintiff's state law claims for negligent retention under Count IV pursuant to 28 U.S.C. § 1367(a) because this

claim is related to and arise from the same case or controversy as Plaintiff's claims under Counts I, II, and III.

13. Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this action arose in Westmoreland County, which is among the territories assigned to the Richmond Division of the Eastern District of Virginia. *See* Local Rule 3 of the U.S. District Court Rules (E.D. VA).

## FACTUAL BACKGROUND

**A.   Carry-On's history of fostering sexual harassment of its female employees.**

14. Carry-On did not have policies or procedures addressing sex discrimination and sexual harassment in the workplace which were effective in preventing sexual harassment at the Montross facility.

15. Carry-On has a history of allowing sexual harassment of the female employees at its Montross facility. *See Lisa White v. Carry-On Trailer, Inc.*, U.S. Dist. Ct. (EDVA Richmond Div.) Civil Action No.: 3:17cv820-REP (a case involving sexual harassment claims that a supervisor at the Carry-On Montross facility slapped a female assembly line worker on the buttocks and made sexually offensive comments and advances); *Lisa White v. Carry-On Trailer, Inc., et al.*, Henrico County Circuit Court Case No. CL17-2799-00 (a related case involving assault and battery and other claims arising from the same supervisor at the same Carry-On facility who harassed the same female employee by, among other things, rubbing her breasts and buttocks and making sexually charged and offensive comments to her).

**B.   Carry-On's culture of tolerating sexual harassment of female employees and, more specifically, ignoring complaints from them about sexual harassment.**

16. Since 2012, Gregory William Moon ("Moon") has been the Human Resources Manager for Carry-On's Montross facility.

3

17. Moon lacks the necessary experience or education to be a human resources manager and, unsurprisingly, he is incompetent at the job.

18. After working in grocery stores and a textile plant, Moon was hired by Carry-On in about 2005 as a shift supervisor at the Montross facility. After two weeks, he became a cargo plant manager. He was later promoted to general manager and, when that did not work out, he was demoted back to cargo plant manager. He later served as a general manager before leaving the company in 2010 to work as a store manager for Dollar General. When that did not work out, he returned to Carry-On as a quality control manager in March 2011. In 2012, Carry-On asked Moon if he would like to try human resources and, despite his lack of applicable experience, education, certifications, or training, Carry-On made him the Human Resources Manager for the Montross facility.

19. Carry-On and Moon fail to appropriately enforce policies designed to prevent sex discrimination and sexual harassment in the workplace.

20. Similarly, Carry-On and Moon fail to enforce policies on workplace behavior and safety, policies of the kind that should be in place to protect employees such as Ms. Brooks.

21. For example, under Moon's watch, Carry-On employees routinely arrive to work under the influence of drugs and alcohol and they openly use illegal drugs and alcohol at work. Male employees often smell of marijuana and liquor while in the workplace. Carry-On fails to stop such behavior and often it is simply ignored by the company.

22. As a housekeeper, Ms. Brooks often found evidence of alcohol consumption in the workplace, see photographs attached as Exhibit A, and once she was stuck with a needle in a bathroom trash can. Another time, Ms. Brooks passed out at work and struck her head and Carry-On would not let her leave work to go to the hospital.

23. On another occasion, a male employee had an overdose from drugs at work, he was lying on the ground and foaming from the mouth, and Carry-On management did not call 911 or seek appropriate medical attention for the man.

  **C.** **Sexual harassment of Ms. Brooks at Carry-On's Montross facility.**

24. Ms. Brooks began her employment at Carry-On on or about January 31, 2019, initially working on the front line wiring trailers. After an allergic reaction to the paint on the trailers, she was reassigned to be what Carry-On calls a "housekeeper."

25. In the workplace, Ms. Brooks was frequently subjected to comments directed to her from multiple male coworkers that were sexually explicit, degrading, and humiliating.

26. Ms. Brooks lodged complaints about such comments and sexual harassment to Moon, as well as supervisors named Bill and Brian.

27. In response to Ms. Brooks' complaints, Carry-On (and specifically, Moon and the supervisors) did not take appropriate action to correct or prevent the sexual harassment and so it continued.

28. On or about March 21, 2019, a coworker, James C. Andrews III a/k/a Jersey ("Andrews"), sexually harassed and assaulted Ms. Brooks while she was attempting to clean the men's bathroom.

29. On said date, Ms. Brooks was trying to clean the men's bathroom. As Ms. Brooks was bent over wringing out a towel, Andrews came up behind her in an aggressive manner, grabbed Ms. Brooks by her waist, and threw her up against the bathroom wall. Then Andrews, a large and strong man, forcefully pushed Ms. Brooks against the wall, pulled up her shirt and bra, gripped her breasts, and said "shut the fuck up," "I'll take it," "I'll take this shit," "I'll take you right here," or words to the same effect, repeatedly, in an violent and angry manner.

30. Ms. Brooks reasonably believed that Andrews was going to rape her and she tearfully begged for him to stop and let her go.

31. The assault and battery stopped only when another employee entered the bathroom. Ms. Brooks fears what would have happened to her if Andrews was not interrupted by the other employee.

32. Ms. Brooks went directly to Moon's office and reported the incident to Moon. She was emotionally distraught and crying. Moon told her to stop crying so the other employees would not hear her.

33. Moon then forced Ms. Brooks to meet with Andrews in person, right then and there, to discuss the incident. Ms. Brooks did not want to see Andrews because she was understandably fearful and shaken from the assault which was akin to an attempted rape. Nevertheless, Moon made Ms. Brooks meet with Andrews and Moon convened an informal meeting between Ms. Brooks and her attacker.

34. At the meeting, Andrews stated to Moon, "man, you know what I am on" or words to the same effect. In doing so, Andrews was stating or inferring that he was under the influence of drugs (most likely cocaine) and/or alcohol in the workplace and Moon knew it. Moon told Andrews to stop talking.

35. After hearing this, Moon instructed Ms. Brooks and Andrews to return to work, to not talk about the incident, and to not talk to each other anymore.

36. Thereafter, Carry-On conducted no further investigation into Ms. Brooks' assault. Despite his criminal misconduct and admitted drug use on the job, Andrews was not disciplined by Carry-On and he was allowed to immediately go back to work. To Plaintiff's knowledge, Andrews was never disciplined for the incident and his employment with Carry-On continued.

37. On subsequent occasions, Andrews approached Ms. Brooks in the workplace which made her fearful of another assault or worse.

38. Even after Andrews was charged with assault and battery under Va. Code § 18.2-57 for the incident and Ms. Brooks obtained a protective order against Andrews, Carry-On continued to employ him.

39. Another coworker, Johnnie Ray Parker ("Parker"), would frequently touch and kick Ms. Brooks and grab her clothing. She made multiple complaints about Parker and for a long time Carry-On (specifically, Moon) did not take any corrective action.

40. On or about July 24, 2019, Parker sexually harassed and assaulted Ms. Brooks at the Montross facility.

41. Parker was notorious for coming to work under the influence and, on this day, he was visibly drunk. Parker pulled Ms. Brooks' hair and smacked her so hard on her back that it left a bruise.

42. Ms. Brooks promptly reported the incident to Moon.

43. On or about July 30, 2019, in a discussion with Ms. Brooks about the harassment and assaults, Moon told Ms. Brooks that "sometimes a woman asks for this to happen….you are going to have to tolerate certain things" or words to the same effect, meaning Ms. Brooks would have to tolerate sexual harassment at Carry-On.

44. Moon's typical response to Ms. Brooks' complaints was to be dismissive of her concerns, downplay the severity of the workplace misconduct, and tell her to go back to work.

45. Based on the lack of an appropriate response by Carry-On and Moon to her complaints of sexual harassment and workplace misconduct, on or about July 30-31, 2019, Ms.

Brooks contacted Carry-On's corporate office and made a complaint about the assaults and sexual harassment that she had been enduring at the Montross facility.

46. Thereafter, Carry-On's sexual harassment policy was removed from the location where it used to be found.

47. After Ms. Brooks made her complaints about the assaults and sexual harassment, she was treated even worse by Moon and others. For example, they would talk to Ms. Brooks in a rude and disrespectful manner and they were more demanding of the work they required of her.

48. On or about August 9, 2019, Ms. Brooks was terminated by Carry-On. More specifically, Moon fired Ms. Brooks.

49. The reason that Carry-On proffered for Ms. Brooks' discharge was job abandonment based upon an event that occurred on August 6, 2019. On that day, Ms. Brooks had permission to leave work in order to briefly meet her son and mother at a local fair and she had permission to do so from a supervisor. It was an excused absence that provided no basis for her termination. Rather, the reason was pretextual and the discharge was retaliatory after Ms. Brooks went over Moon's head and reported the assaults and sexual harassment to Carry-On's corporate human resources office in Georgia.

50. On August 8, 2019, Moon coerced Carry-On employee, Katina Wise ("Wise"), into signing a statement that she saw Ms. Brooks at a local county fair on August 6th. Wise has since admitted that she gave the statement only because she was threatened with termination if she did not do so.

D. Summary

51. While a Carry-On employee at the Montross facility, Ms. Brooks was subjected, by Andrews, Parker, and other male coworkers, to unwelcome, nearly continuous, intimidating, and

extreme sexual harassment, including, but not limited to, unwelcome sexual advances, assaults, and physical touching of Ms. Brooks' body in a sexual manner, and sexually charged, offensive, degrading, and crude comments about and directed toward Ms. Brooks.

52. Carry-On failed to undertake reasonable care to prevent and promptly correct the misconduct and sexual harassment of Ms. Brooks after Carry-On knew, or should have known, that the same was regularly occurring.

53. Even after other female employees at the Montross facility have made similar complaints about sexual harassment, Carry-On did not investigate Ms. Brooks' complaints, or at least not to any reasonable degree, did not discipline the harassers in any meaningful way, and did not take any reasonable steps to prevent or correct the sexual harassment and serious misconduct regularly occurring at the Montross facility.

54. To the contrary, Carry-On and its management and human resources personnel essentially ignored the complaints by Ms. Brooks and/or others about sexual harassment and misconduct in the workplace.

55. After Ms. Brooks made complaints of sexual harassment, assaults and misconduct, she was retaliated against and discharged by Carry-On upon pretextual grounds.

56. As a result, Ms. Brooks has suffered physical and mental injuries, pain and suffering, and emotional distress, anxiety, mental anguish, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, and stress, for which damages Carry-On is liable.  She has been forced to expend funds in the procurement of counseling to treat her injuries, she has incurred a loss of income, and her damages are ongoing.  Her injuries have had a major negative impact on the quality of her life and her personal and social affairs.

## CAUSES OF ACTION

### COUNT I:
### SEXUALLY HOSTILE WORK ENVIRONMENT CLAIM
### (42 U.S.C. § 2000e-2(a)(1))

57.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

58.     Ms. Brooks was subjected to unwelcome sexual advances, assaults, physical touching, and sexually charged and offensive comments, directed toward her, and based upon her sex.

59.     The conduct of Andrews and Parker described herein was sufficiently severe or pervasive to alter the conditions of Ms. Brooks' employment and create a sexually abusive or hostile work environment.

60.     Ms. Brooks perceived the work environment at the Montross facility to be offensive, abusive and/or sexually hostile.

61.     A reasonable person in Ms. Brooks' circumstances would consider the work environment at the Montross facility to be offensive, abusive and/or sexually hostile.

62.     Enduring the offensive, abusive and/or sexually hostile conduct was a condition of Ms. Brooks' continued employment with Carry-On. Moon stated as much when he told Ms. Brooks that, as a woman, she would have to tolerate it.

63.     On multiple occasions, Ms. Brooks made complaints and tried to take advantage of the preventative or corrective opportunities purportedly afforded to her under Carry-On's policies. However, Carry-On's policies on sexual harassment, if any, are not worth the paper they are printed on because they are not enforced. Carry-On and its human resource manager, Moon, do not care about sexual harassment nor about the safety and the welfare of Carry-On's employees and the company does not try to comply with Title VII.

64. Carry-On had actual or constructive knowledge of the offensive, abusive and/or sexually hostile conduct and did not take reasonable and necessary steps to promptly and/or appropriately correct or rectify this behavior and/or promptly remove Andrews from the workplace.

65. Carry-On was negligent with regard to the offensive, abusive and/or sexually hostile conduct and its negligence permitted the conduct to continue and result in the sexual harassment and assaults of Ms. Brooks. For example, Carry-On employed an incompetent, unresponsive, and uncaring Human Resources Manager, Moon. Carry-On failed to monitor the workplace to prevent harassment and failed to appropriately respond to complaints of sexual harassment, investigate the same, and correct harassment and misconduct.

66. A reasonable person or employer, intent on complying with Title VII, would have known about the pervasive sexual harassment at Carry-On and the offensive, abusive, sexually hostile, and dangerous work environment that is Carry-On's Montross facility.

67. Carry-On acted with actual malice toward Ms. Brooks and/or acted under circumstances amounting to a reckless, willful, and wanton disregard of Ms. Brooks' federally protected rights.

68. Due to the acts and/or omissions of Carry-On, Ms. Brooks has suffered physical and mental injuries and emotional distress and incurred compensable damages for which Carry-On is liable.

## COUNT II:
## RETALIATION CLAIM
## (42 U.S.C. § 2000e-3(a))

69. Plaintiff incorporates by reference and re-alleges each allegation set forth above.

70. Ms. Brooks engaged in protected activity by reporting to Carry-On (including, specifically Moon, other supervisors, and Carry-On's corporate human resources office) the sexual harassment and misconduct described herein, as alleged more particularly above.

71. In response, Carry-On retaliated against Ms. Brooks for complaining about sexual harassment by terminating her employment, which constitutes a materially adverse action.

72. Carry-On's discharge of Ms. Brooks was punitive and unlawfully retaliatory in response to Ms. Brooks' complaints of sexual harassment and her participation in activities that are protected from retaliation under Title VII.

73. As alleged above, Ms. Brooks has suffered physical and mental injuries and emotional distress and incurred compensable damages for which Carry-On is liable.

### COUNT III:
### DISCRIMINATION ON THE BASIS OF SEX
### UNDER TITLE VII (42 U.S.C. § 2000e-2(a)(1))

74. Plaintiff incorporates by reference and realleges each allegation set forth above.

75. Carry-On willfully discriminated between employees on the basis of sex by allowing male employees to regularly violate company policies and fundamental rules of workplace safety while, at the same time, strictly enforcing such policies with regard to female employees.

76. Carry-On willfully discriminated against Ms. Brooks on the basis of her sex by strictly enforcing company policies as to her and terminating her on the basis of an alleged offense that would have been a relatively minor, first offense (and which is denied by Ms. Brooks) while Carry-On allows male employees, like Andrews, to come to work under the influence of drugs and alcohol, drink and use illegal drugs on the job, and commit serious, violent, and criminal acts and misconduct in the workplace without repercussion.

77.     Sex is not a bona fide occupational qualification reasonably necessary to the normal operation of Carry-On's business and there is no justification or excuse for Carry-On's discrimination.

78.     Carry-On's discharge of Ms. Brooks, an employee with no prior disciplinary history, was discriminatory and in violation of her rights under Title VII.

79.     As alleged above, Ms. Brooks has suffered physical and mental injuries and emotional distress and incurred compensable damages for which Carry-On is liable.

## COUNT IV– NEGLIGENT RETENTION
### (under Virginia common law)

80.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

81.     In the jurisdiction of Westmoreland County alone, Andrews has had alcohol and drug charges against him as follows:

| Offense | Offense Date | Disposition Date | Disposition |
|---|---|---|---|
| Possession of marijuana (Va. Code § 18.2-250.1) | 8/22/17 | 10/3/2017 | Guilty |
| Felony possession of a controlled substance (Va. Code § 18.2-250) | 3/16/2018 | 9/27/2019 | Nolle Prosequi |
| Possession of marijuana (Va. Code § 18.2-250.1) | 3/16/2018 | 9/27/2019 | Nolle Prosequi |
| Drinking while driving (Va. Code § 18.2-323.1) | 3/16/2018 | 10/2/2018 | Nolle Prosequi |

82.     It was well known that Andrews would often come to work under the influence of drugs and alcohol and use drugs and alcohol on the job. Andrews was also aggressive towards others in the workplace.

83.     On March 21, 2019, Andrews was under the influence of drugs and/or alcohol in the workplace and he said Moon knew what drugs/alcohol he was on. That day he committed an assault and battery of Ms. Brooks, as described above.

84. It was well known that Parker would frequently come to work drunk, drink on the job, and he was drunk on July 24, 2019. That day he committed an assault and battery of Ms. Brooks, as described above.

85. Carry-On, through its negligence, acts and omissions, and deliberate indifference to fundamental principles of employee safety, created a workplace at the Montross facility where illegal drug and alcohol use was rampant.

86. Carry-On knew, or should have known, that Andrews and Parker had alcohol and/or drug problems, they were abusing alcohol and/or drugs on the job, and as a result they were likely to engage in misconduct such as assaults and batteries while under the influence at work. As described above, Andrews tried to blame his sexual assault and battery of Ms. Brooks on the drugs/alcohol he was on at the time.

87. Carry-On allowed drinking and illegal drug use at the Montross facility which presented Andrews and Parker with opportunities to get drunk and high on the job, commit the tortious acts described herein, and inflict harm and physical injuries upon Ms. Brooks and, in fact, they did so.

88. Carry-On retained Andrews and Parker as employees when Carry-On knew, or should have known, that they had propensities to get drunk and/or high and commit the tortious acts described herein at work and cause the type of injuries and damages suffered by Ms. Brooks.

89. Further, Carry-On retained Andrews as an employee after it was known that Andrews assaulted and battered Ms. Brooks on March 21, 2019, and Ms. Brooks suffered fear, anxiety, and stress as a result of Andrews' continued employment at the Montross facility.

90. As a result of Carry-On's negligent retention of Andrews and Parker, Ms. Brooks has suffered physical and mental injuries and emotional distress and incurred compensable

damages for which Carry-On is liable. At all relevant times, the injuries, damages and harm sustained by Ms. Brooks were reasonably foreseeable under the circumstances.

91. Carry-On acted with actual malice toward Ms. Brooks and/or acted under circumstances amounting to a reckless, willful, and wanton disregard of Ms. Brooks' rights.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Diakeshia S. Brooks, respectfully requests that this Court:

A. Enter judgment in her favor and against Defendant, Carry-On Trailer, Inc.;

B. Declare the acts and practices complained of herein to be unlawful and in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

C. Enjoin Defendant from engaging in such unlawful employment practice and order such other affirmative action as may be appropriate;

D. Award Plaintiff compensatory damages for Defendant's violation of Plaintiff's federal constitutional and civil rights, including, without limitation, pecuniary losses, lost wages, damages for mental and/or emotional distress, inconvenience, humiliation, embarrassment, personal and professional reputational damages, and other damages to be shown at trial;

E. Award Plaintiff compensatory damages for Defendant's violation of Plaintiff's rights under Virginia common law (Count III);

F. Award Plaintiff all back pay and benefits, including salary increases, with interest on same running from August 9, 2019, until the date a final judgment is entered for her;

G. Award Plaintiff punitive damages against Defendant (All Counts);

H. Award Plaintiff her reasonable attorneys' fees and costs expended herein;

I. Award Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back or front pay;

J. Award Plaintiff pre- and post-judgment interest on any monetary award;

K. Award Plaintiff all other equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 2000e-5; and

L. Award Plaintiff any and all other and further relief the Court deems just and appropriate, including leave to amend the facts stated herein, add parties and/or claims, and amend the damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

        Respectfully submitted,
        **DIAKESHIA S. BROOKS**
        *Plaintiff*

Dated: November 5, 2020.        /s/  Robert J. Allen
        Counsel

        Robert J. Allen (VSB No. 65214)
        THORSENALLEN LLP
        5413 Patterson Avenue, Suite 201
        P. O. Box 17094
        Richmond, VA  23226
        Telephone: (804) 447-7234
        Facsimile: (804) 447-7813
        E-mail: rallen@thorsenallen.com
           *Counsel for Plaintiff, Diakeshia S. Brooks*